## THOMPSON *against* STEWART.

Where the person, before whom a deposition was taken, in another state, subscribed his name to the certificate, annexing thereto the letters "J. P.," and the deposition was accompanied by a certificate of the county clerk, authenticated under the seal of the county, that such person was a *justice of the peace;* it was held, that such certificate, and the official capacity of the magistrate, were sufficiently authenticated.

Where a deposition, directed "to the *supreme* court of the state of *Connecticut,* to be held at *New-London,* on the third *Tuesday* of *January,* —" was offered to be used in a cause pending in the superior court, held at *New-London,* in *September,* 1819; which had been continued from the term of that court, held at the same place, on the third *Tuesday* of *January* preceding; it was held, that this direction, though not literally correct, was sufficiently intelligible to render the deposition admissible.

It is not an indispensible requisite in a deposition, that the reason of taking it be stated in the certificate of the magistrate, before whom it is taken.

Where a witness swears positively to facts, it constitutes no exception to the admissibility of his testimony, that, from the nature of the subject, such facts could not be within his knowledge.

The seal of a court of admiralty, like a national seal, proves itself. Therefore, where the record of a decree of the court of vice-admiralty in *Bermuda,* purporting to be certified by the deputy-registrar, under the seal of the court, was offered in evidence, with no other proof of authenticity, it was held to be admissible.

Where a decree of admiralty, restoring to the claimant, property libelled as prize, was offered, in connexion with other facts, as *prima facie* evidence, that such property belonged solely to the claimant; it was held to be admissible for that purpose.

In foreign attachment, the plaintiff may introduce other evidence than the disclosure of the garnishee, to prove the indebtedness in issue; and the law does not prescribe the order in which the proof is to be received.

Decided at
*Tolland,*
*November* 3.

*New-London,*
October,
1819.

Thompson
*v.*
Stewart.

Where property, claimed by *A.*, being libelled in the admiralty court as prize, was delivered to *B.*, to indemnify him for bonds given by him in that court, in behalf of *A.*; and, after a decree of restitution, by which the bonds so given, were discharged, of which, however, *B.* had no notice, a creditor of *A.* commenced a process of foreign attachment against *B.*, to recover the property of *A.* in his hands; it was held, that the plaintiff, notwithstanding such want of notice, was entitled to recover.

An agent, constituted for a particular purpose, under a limited power, cannot bind his principal, by any act in which he exceeds his authority.

Where an agent, authorised to sell a cargo in the *West-Indies* for bills on *England*, to be placed subject to the principal's order, sold the cargo for such bills, but instead of placing them subject to the principal's order, invested them in flour on his own account, it was held, that he thereby became responsible to his principal for the amount of such bills; and whether he, afterwards, by reason of the non-payment of any of them, became responsible for them to the holder, or by reason of the holder's *laches*, was exempted from liability, could be of no avail, as between him and his principal.

Where bills, drawn in the *West-Indies*, were purchased in *New-York*, over-due and protested, it was held, that, in the absence of proof, the legal presumption was, that the drawer had funds in the hands of the drawee, and that he was exonerated from liability, for want of due notice.

An agent, entitled to retain property for his indemnity, although he disposes of it without authority, is not chargeable with interest on the avails of that property, during the continuance of his lien.

THIS was a *scire-facias*, in a process of foreign attachment, against the defendant, as the trustee and debtor of *John B. El-bers*. A copy of the writ in the original suit was left in service with the defendant, on the 10th of *November*, 1815.

The cause was tried at *New-London, September* term, 1819, before *Bristol*, J.

The ground of the defendant's indebtedness to *Elbers*, as claimed by the plaintiff, was, his having received and appropriated to his own use, the proceeds of the cargo of the brig *Gretna Christina*, the property of *Elbers*. In the latter part of the year 1813, or beginning of 1814, *Elbers*, being a subject of the king of *Sweden*, residing at *St. Bartholomews*, shipped a cargo of sugars on board the *Gretna Christina* for the *United States*. This vessel, with her cargo, was captured by the *Ld Hogue*, a *British* ship of war, and carried into *Bermuda*, where they were libelled in the vice-admiralty court, as prize of war. The master applied to the defendant, then in *Bermuda*, to act as agent for the vessel and cargo. The defendant assumed the agency; and his character as agent was subsequently recognized by *Elbers*. The defendant gave bonds, in the vice-admiralty court, for the appraised value of

New-London,
October,
1819.

Thompson
v.
Stewart.

the vessel and cargo ; and thereupon they were both delivered up to him. He sent the vessel back to *Elbers*, at *St. Bartholomews*, but sold the cargo for 25,021 dollars, 32 cents, which he received in bills of exchange drawn on *England*, by *John Dempster* and *William Banks*. The sale of the cargo and the investment thus made, were shortly afterwards approved of by *Elbers*, who directed the bills to be placed subject to his order. Further proof having been ordered, by the court of admiralty, the vessel and cargo were finally acquitted, and restored to the claimant *Elbers*, on the 31st of *May*, 1815.

The bills of exchange, thus received, the defendant, without the knowledge or assent of *Elbers*, invested in a cargo of flour, which he shipped to *Thomas Alman*, of *Barbadoes*, a person then in good credit. This was done, as the defendant stated in his disclosure, with a view to place the funds in a situation in which he might command them, either to answer his bonds in the admiralty court, in one event, or to account with the owner, in another. In the year 1816, *Alman* gave him an acceptance for 2,900*l.* sterling, on account of the flour, with which he procured bills on *England*, which were paid ; but *Alman*, dying insolvent, before his acceptance became payable, the defendant, as drawer, was obliged to refund the amount to the holder.

There was no evidence that the defendant, at the time the copy was left in service with him, had been notified, or had any knowledge, of the decree of acquittal. He contended, therefore, that the plaintiff acquired no right whatever, by such service, inasmuch as the debt, admitting the eventual liability of the defendant, was contingent, until such notice was given.

The defendant claimed, that one *Crafts*, domiciled at *Baltimore* in the *United States*, was a partner of *Elbers* in the cargo of the *Gretna Christina;* and contended, that such being the fact, he, the defendant, was not liable in this process, as the trustee and debtor of *Elbers* alone. The plaintiff insisted, that both vessel and cargo were the property of *Elbers* alone ; and to prove that fact, as well as to shew the acquittal and restoration of the property, he offered in evidence a document, purporting to be an exemplification of the vice-admiralty court, under the seal of that court, and certified by the deputy-registrar, but not accompanied with any other proof of authenticity. The decree found, that the vessel and cargo were not enemy's property, without determining positively, whose property they were. To the

*New-London,*
October,
1819.

Thompson
*v.*
Stewart.

admission of this document, for the purposes stated, the plaintiff objected ; but the judge over-ruled the objections, and decided, that it was admissible, not only as evidence of the final liberation of the property, but as *prima facie* evidence, that the property of the vessel and cargo was in *Elbers.*

The plaintiff offered in evidence, the deposition of one *Evers,* " sworn before *Frederick Wood,* J. P." who was certified, by the clerk of the county, to be a justice of the peace. In the beginning of the deposition, it was stated, that " *Evers* appeared, and made solemn oath on the holy evangelists of Almighty God." It was directed to " the supreme court, to be held at *New-London,* on the third *Tuesday* of *January.*" There was no certificate of the magistrate before whom it was taken, of the reason of taking it. To the admission of this deposition, the defendant objected, on the ground, that the legal requisites in taking it, had not been complied with, and that part of its contents, stating the invoice cost of the cargo in question, could not be facts within the deponent's knowledge. These objections the judge over-ruled, and admitted the deposition.

The plaintiff also offered in evidence, sundry letters from the defendant, and the depositions of disinterested persons, to which the defendant objected, on the ground that the plaintiff could not make out his case, by common law testimony, without first calling on the defendant to disclose, he being in court, and offering to disclose. This objection, also, the judge over-ruled, and suffered the evidence adduced to go to the jury, without first calling on the defendant for his disclosure ; allowing the defendant the privilege of making his disclosure afterwards.

The defendant being in *England,* in 1816, suits were commenced against him, as the indorser of bills of exchange, to the amount of 1500*l.* or 1600*l.* sterling, which he he had received in payment of the cargo, and passed away for flour ; such bills having never been paid by the drawee or other parties ; but upon the trial, he was held to be discharged from his liability as indorser, for want of due notice of the dishonour. In relation to these bills, the defendant claimed, that he was entitled to stand on the same ground as though he had taken them up.

The defendant exhibited an account current between him and the *Gretna Christina,* in which he had charged certain

protested bills of exchange, drawn by *Elbers*, which the defendant had purchased, in the spring of 1815, of *Minturn & Champlin*, and one *Davis*, of *New-York*, with the protest accompanying them, being informed by the holders, of whom he purchased them, that due notice of the dishonour had been given to *Elbers*. No evidence, however, of such notice, or of the liability of *Elbers*, was produced. The defendant claimed, that in case he was liable for the proceeds of the cargo, such protested bills, having been purchased by him, before the copy was left in service, ought to be deducted from the amount, or set off against so much of the plaintiff's claim. The plaintiff contended, that such deduction, or set-off, could not be made, because the defendant, to entitle himself to an allowance to the amount of the bills, must furnish evidence that *Elbers* was liable, as drawer, to pay them. The defendant insisted, that from the circumstances under which the bills were purchased, and the length of time which had elapsed, without any claim on the part of the plaintiff, or of *Elbers*, that the drawer had not been duly notified, the jury had right to presume, that every thing had been legally done by the holders.

The judge instructed the jury, that although the defendant was not notified of the decree in admiralty, restoring the cargo in question, at the time when the copy was left with him, still the copy was well left, and secured to the plaintiff the avails of this cargo, provided the defendant was responsible to *Elbers* for it ; and that, if the jury found that the cargo was the joint property of *Elbers* and *Crafts*, or if the defendant had conducted within the limits of his authority as an agent, in disposing of the bills of exchange, and investing them in the flour, which was shipped to *Alman* at *Barbadoes*, the defendant was not liable. But, if the original cargo intrusted to the defendant, was the sole property of *Elbers ;* and if the defendant, in disposing of the bills of exchange, and investing them in flour, did not conduct within the limits of his authority, as the agent of *Elbers ;* he was responsible for the bills of exchange, including those which had not been paid, provided the defendant was not still holden as indorser, and the interest, from the time he made the unauthorised investment of them in flour. And in the event of their finding the defendant liable, the jury could not set off or deduct the bills of exchange drawn by *Elbers ;* as the holder, to entitle himself to such set-off, must

*New-London,*
October,
1819.

Thompson
*v.*
Stewart.

prove, that notice had been regularly given to the drawer, of which, in this case there was no evidence.

The jury returned a verdict for the plaintiff, to recover of the defendant 21,619 dollars, 90 cents; and the defendant thereupon moved for a new trial, on the ground, that the several points ruled against him during the trial, were decided contrary to law, and that the direction to the jury was erroneous. The judge reserved the motion.

*Goddard* and *E. Learned,* in support of the motion, contended, 1. That the deposition of *Evers* ought not to have been received. First, it was not properly addressed. Secondly, the person taking it, did not subscribe the certificate in his official capacity, the letters " J. P." annexed to his name having no legal meaning. Thirdly, the certificate stated no reason for taking the deposition, and none appeared from its contents. *Bradstreet* & al. v. *Baldwin,* 11 *Mass. Rep.* 229. *Amory* v. *Fellows,* 5 *Mass. Rep.* 219. *Buddicum,* v. *Kirk,* 3 *Cranch,* 293, 297. Fourthly, the matter of the deposition was exceptionable, as the defendant testified to mere inferences, and not to facts, which were, or could be, within his knowledge.

2. That the decree of the vice-admiralty court was inadmissible, not being properly authenticated. The court will take judicial notice of a foreign *national* seal, but not of any other foreign seal. There is a distinction between the *effect* of a decree of admiralty, and a judgment of a municipal court, but none as to the mode of authentication. Foreign judgments, according to Ch. J. *Marshall,* may be authenticated in three modes: first, by an exemplification under the great seal; secondly, by a copy proved to be a true copy; and thirdly, by the certificate of an officer authorised by law, which certificate must itself be properly authenticated. These, he says, are the usual and most proper, if not the only modes, of verifying foreign judgments. *Church* v. *Hubbart,* 3 *Cranch* 238. The law is laid down here, as well as elsewhere, in relation to foreign courts *generally,* without inquiring into their constitution or jurisdiction. *Gardere* v. *The Columbian Insurance Company,* 7 *Johns. Rep.* 514. *Delafield* v. *Hand,* 3 *Johns. Rep.* 310. *Yeaton* v. *Fry,* 5 *Cranch* 335.

3. That if the decree was well authenticated, it was not admissible for the *purpose* for which it was permitted to go to

the jury: it was evidence only of the liberation of the vessel and cargo; not that the property belonged solely to *John B. Elbers.* The rule of law is, that the sentence of a foreign court of admiralty is evidence only of what it positively and specifically affirms,—not of what may be gathered from it by way of inference. *Fisher* v. *Ogle.* 1 *Campb.* 418. Even a domestic judgment is evidence, in another cause, of such facts only, as were necessarily and directly decided. *Ryer* v. *Atwater* & al. 4 *Day* 433. This decree ordered a restitution of the property, but did not decide whose it was.

4. That no evidence should have been admitted, until the plaintiff had called on the defendant to disclose. The statute has made the garnishee in foreign attachment the principal, and according to the decisions in *Massachusetts*, the only witness in the case. 1 *Stat. Conn. tit.* 14. *c.* 3. *s.* 4. *Whitman* & al. v. *Hunt* & al. 4 *Mass. Rep.* 272. He is first to be resorted to; and if any farther evidence is to be received, it is only to confirm, or to discredit, his disclosure.

5. That the charge was wrong as to the defendant's liability generally. His having exceeded his authority as an agent, in relation to the funds in his hands, did not create a *debt* to *Elbers*, recoverable by foreign attachment. Besides, he had a right to retain those funds until he had notice of the decree of acquittal.

6. That the charge was wrong as to the bills on *England*, which were dishonoured, and on which the defendant was sued. If he got rid of them, for want of due notice, it was the same thing to *Elbers*, and to the plaintiff, as though he taken them up; and if he had taken them up, it would have diminished the funds of *Elbers* in his hands, by that amount.

7. That the charge was wrong as to the protested bills of *Elbers*, purchased by the defendant in *New-York*. Whether due notice of the dishonour had been given to *Elbers*, was a question of fact, exclusively within the province of the jury to determine. If the question had been properly submitted to them, they might, from the circumstances under which the bills were purchased, together with the length of time elapsed, without any claim of negligence on the part of *Elbers*, have presumed that due notice had been given.

8. That the charge was wrong as to the allowance of interest. These funds were held by the defendant, with the approbation of *Elbers*, to indemnify him for his bonds in the ad-

*New-London,*
October,
1819.

~~~~~~

Thompson
*v.*
Stewart.

miralty court. The case is not within the broadest of our decisions for the allowance of interest. *Selleck* v. *French*, 1 *Conn. Rep.* 33. *res.* 5. *Knight* v. *Reese*, 2 *Dall.* 182. *Fitzgerald* v. *Caldwell*, 2 *Dall.* 215. *Crockford* v. *Winter*, 1 *Campb.* 129.

*Law* and *W. F. Brainard*, contra, went into a minute and elaborate examination of the several grounds urged in support of the motion. They introduced their remarks, by exhibiting a general statement of the case, as it appeared after verdict; which was in substance as follows : That the property in question was the sole property of *John B. Elbers ;* that it came into the defendant's hands as his agent, under the bond given by the defendant in the vice-admiralty court; that that bond was discharged, by the restitution of the property ; that the defendant sold the property, and realized 25,000 dollars, in *Bermuda ;* that he invested the proceeds in flour, on his own account; that he put this property into the hands of *Alman*, subject to his own exclusive controul; and that he has never remitted any thing to *Elbers*, or placed it subject to his controul, and has never accounted with him. They then contended,

1.   That the deposition of *Evers*, was properly admitted. It was sworn before " *Frederick Wood*, J. P." Then there was a certificate of the clerk of the county, authenticated under the seal of the county, that *Frederick Wood* was a justice of the peace, explaining the meaning of the abbreviation " J. P.", and verifying the official character thus assumed. It is sufficient that a substantial reason for taking the deposition was proved to have existed, though not expressed in the certificate of the magistrate ; and that the deposition came to the right court, whatever might have been the superscription. The objection to the *body* of the deposition, goes not to its admissibility, but to its *effect ;* with regard to which the defendant has had an opportunity to be heard before the jury, and they have given their decision upon it.

2.   That the admiralty record was properly admitted. Seals are of three distinct kinds ; national, admiralty, and municipal. They are also divisible into foreign and domestic. Those of the first kind, whether foreign or domestic, it is admitted, require, *prima facie*, no proof. The seal of an admiralty court, acting under the law of nations, carries with it the

New-London,
October,
1819.

Thompson
v.
Stewart.

same authenticity. *Swift's Ev.* 7. *Peake's Ev.* 72. *Green v. Waller,* 2 *Ld. Raym.* 893. A court of admiralty is not considered as *local;* and therefore, cannot be, in the technical sense, *foreign.* The seals of municipal courts require, *prima facie,* no proof at home ; but must be verified abroad. It is to the record of foreign municipal courts, that Ch. J. *Marshall* refers, in *Church* v. *Hubbart,* 3 *Cranch* 238.

3. That the use to be made of the decree was matter of argument to the jury, and could not be the ground of a new trial. Besides, if the question were open for discussion here, it might well be contended, that the restoration of the property to *Elbers,* he being the claimant, was *prima facie* evidence, that it belonged to him.

4. That the verdict ought not to be set aside, because the defendant was not examined before any other witness. In the first place, it is as much the privilege of the garnishee to testify, as it is the right of the creditor to call on him. He is, therefore, his own witness ; and may offer himself at the proper time, for his defence. But if he is the plaintiff's witness, he is not necessarily his only witness ; and it is the right of a party to call his witnesses in such order as he pleases. *Vaughn v. Sherwood,* 1 *Root* 507. *Dewit* v. *Baldwin,* 1 *Root* 138.

5. That at the commencement of this process the defendant had effects of *Elbers* in his hands, the amount of which the plaintiff is entitled to recover. The decree of restitution was passed on the 31st of *May,* 1815 : the defendant was served with process on the 10th of *November,* following. At the latter period, *Elbers* had an unqualified right to the property. But, it is said, that the defendant had no notice of the decree. In the first place, want of notice to the defendant, could not affect *Elbers'* right to the property. But if it did, it only prolonged the defendant's lien upon it ; a circumstance, not exempting it from foreign attachment.

6. That the facts relating to the bills, which the defendant received in payment of the cargo, and passed away for flour, could have no bearing upon the rights of *Elbers,* or of the plaintiff standing in his place. As soon as the defendant disposed of these bills, on his own account, he became responsible to *Elbers* for the amount.

7. That the charge was unexceptionable as to the bills drawn by *Elbers,* which were purchased by the defendant in *New-York.* This purchase was made without authority from

*Elbers ;* and there was nothing to shew, that it could enure to his benefit. *Elbers'* liability on bills over-due, and protested, could not be presumed from the mere fact of his being the drawer ; and there was no evidence of notice to him.

8.    That the verdict ought not to be set aside for a misdirection with respect to interest ; for, in the first place, the jury might well allow interest, as part of the damages arising from the defendant's breach of trust.    But secondly, it does not appear from the amount of the verdict, that interest was allowed ; as the verdict was for a less sum than the avails of the cargo disposed of by the defendant.

HOSMER, Ch. J.    The prescriptions of law concerning depositions, should be strictly required in respect of every thing essential.    This principle, however, is inapplicable to matters of mere form, which cannot affect the interests of justice.    The objections made to the admission of the deposition by *Evers,* fall within this description.    The direction of it, though not literally correct, was perfectly intelligible ; and no doubt exists that it was intended to be used at the superior court in the case of *Thompson* v. *Stewart.*    The letters "J. P." subjoined to the name of the person who took the deposition, when coupled with the accompanying certificate of the clerk, most obviously denote his official capacity ; and so evidently were intended for the words *justice of the peace,* that no person would hesitate to decypher them by this expression. Although it is usual to assign a reason for the caption, it is not made necessary by the law relative to affidavits ; and within my knowledge, the omission to do it has frequently been the subject of an objection, and as frequently has been over-ruled.    The contents of the deposition constitute no objection to its admissibility.    The witness swore positively *to fact,* and not to hearsay or opinion.    If, from the nature of the subject, he could not have had knowledge of the matter to which he testified, this constitutes no exception to the admissibility of his testimony.    It is a fair presumption that the jury placed no reliance upon it.    In my judgment, the objections to the deposition were correctly over-ruled.

The decree of vice-admiralty, admitted by the judge, purported to be under the seal of the court, and to be certified by the deputy-registrar.    It is contended by the defendant, that the record was not duly authenticated.    I am of a differ-

ent opinion. The decisions relative to the adjudications of foreign municipal courts, must be laid out of the question. The seals of such courts are never judicially recognized, but must be proved. *Anon.* 9 *Mod.* 66. *Henry* v. *Adey*, 3 *East,* 221. *Collins* v. Ld. Viscount *Mathew*, 5 *East*, 473. The cases of *Delafield* v. *Hand*, 3 *Johns. Rep.* 310. and *Church* v. *Hubbart*, 2 *Cranch*. 187. are also of this description.

By common consent and general usage, the seal of a court of admiralty has been considered as sufficiently authenticating its records. No objection has prevailed against the reception of the decree of a court acting on the law of nations, when established by its seal. The seal is deemed to be evidence of itself, because such courts are considered as courts of the whole civilized world, and every person interested as a party. *Green* v. *Waller*, 2 *Ld. Ray.* 893. *Peake's Ev.* 74. *Swift's Ev.* 7. The *Maria*, 1 *Rob. Adm. Rep.* 296. The case of *Yeaton* v. *Fry*, 5 *Cranch*, 335. is not adverse to this proposition. The seal of the vice-admiralty court, was not proved by extrinsic evidence. No stress could have been put on the testimony of a witness, that he had *once* received from his proctor a copy of the proceedings in the said court, under a similar seal, or that similar papers had, by insurers and others, been considered authentic. Such evidence was too feeble to establish the fact for which it was adduced, on any reasonable foundation. The seal, then, proved its own authenticity. "Assuming the seal to be genuine," said *Gould* J. in *Griswold* v. *Pitcairne*, 2 *Conn. Rep.* 91. "the fact, (that it was affixed by a proper officer,) must of course be presumed, unless the contrary is shown. For any higher evidence of the fact, appearing upon the face of the record, than the seal itself imports, is impossible; and to require extrinsic evidence of it, would be to subvert the rule itself, that a national seal is the highest proof of authenticity." These remarks are applicable to the seal of a court of admiralty; and for this obvious reason, because, equally with a national seal, it proves itself. As to *Gardere* v. *Col. Ins. Co.* 7 *Johns. Rep.* 519. it professedly waives the question before the court. The seal, in that case, had been proved by extrinsic testimony. "It is therefore," said *Yates* J., who delivered the opinion of the court, "unnecessary to notice the distinction urged in the argument, between foreign municipal tribunals, and courts of admiralty."

New-London,
October,
1819.

Thompson
v.
Stewart.

The decision of the judge, that the admiralty documents, in connexion with the facts proved, were evidence not only of the restoration of the vessel and cargo, but proof, *prima facie*, of property in *Elbers*, is unobjectionable. The cargo was originally consigned to *Stewart*, and he assumed to act, and did act, as the agent of *Elbers*. Under the influence of this relation, he gave bonds for the vessel and cargo, and received them into his custody. The vessel he sent to *Elbers*, as the owner ; and having disposed of the cargo, his conduct by the same person was ratified and approved. These and other facts of a similar tendency, appearing in the case, amount to a recognition, that the property belonged to *Elbers*, and that the defendant held it in the character of agent.

It has been contended, that no evidence should have been admitted, until the testimony of *Stewart* had first been received. This assertion is gratuitous. Other evidence than that of the defendant, the plaintiff may adduce to show his indebtedness ; and, although not required, the garnishee has the privilege of testifying. *Dewit* v. *Baldwin*, 1 *Root* 138. *Vaughn* v. *Sherwood*, 1 *Root* 507. But the order in which the testimony shall be received, is prescribed by no law. It must be regulated by the judge, to effectuate, in the best manner possible, the attainment of justice.

It is agreed, that the defendant disposed of the cargo committed to his charge, for bills drawn on persons in *England*, by *John Dempster* and *William Banks*. This transaction was afterwards approved by *Elbers* ; *et omnis ratihabitio retrotrahitur, et mandato equiparatur.* Without the knowledge or assent of *Elbers*, the defendant disposed of the bills for a cargo of flour, with a view, (as he says,) to promote the interest of his principal, and shipped it to one *Alman ;* the avails of which cargo have never been realized. Subsequent to this, on the 31st of *May*, 1815, the vessel and cargo of *Elbers*, were finally acquitted. On the 10th of *November*, 1815, the plaintiff instituted his action, by foreign attachment, and left a copy with *Stewart*, as the debtor of *Elbers*. The cargo had been delivered to *Stewart*, to indemnify him as the bondsman of *Elbers* in the court of vice-admiralty ; and neither notice nor knowledge of the acquittal at *Bermuda*, had been received by him, until sometime posterior to the attachment. The jury were instructed, that the copy left with *Stewart*, notwithstanding the above want of notice or knowledge, secured to the at-

*New-London,*
October,
1819.

Thompson
*v.*
Stewart.

taching creditor, the avails of the cargo. The judge likewise submitted to the jury, whether, in the preceding transaction, the defendant had acted as a faithful agent within the powers vested in him; and the verdict, by necessary implication, finds that he had not. To the charge, on the part of the defendant, there can exist no legal objection. Had the lien of *Stewart* remained at the moment when the copy was left with him, I should consider the attachment to be valid. He was accountable for the property entrusted to his agency. The lien he had upon it, was merely an incumbrance, which suspended the remedy of *Elbers*, and eventually might defeat his claim; but in the mean time, *Stewart* was his debtor. It did not render his liability contingent, or operate as a condition precedent to any indebtedness or accountability. The lien, however, was dissolved, previous to the attachment; and the only assignable reason why *Stewart* was not immediately obliged to account with his principal, was, that he had not received information of the preceding fact. Until he had knowledge that his lien had terminated, he was not bound to relinquish his hold on the property. This, however, did not affect his indebtedness to *Elbers*, although it suspended the remedy of *Elbers* against him.

The verdict shows, that *Stewart* did not act as a faithful agent in the disposal of the bills; and this fact establishes his responsibility for their value. In the flour purchased, *Elbers* had no interest; for, by the transfer of the bills, he had lost all right to their avails. His property in them was annihilated, and the flour belonged, exclusively, to *Stewart*. It would have been correct for the judge to have charged the jury, that by the disposal of the bills, without the assent of *Elbers*, the defendant had transcended his authority, and was responsible for their amount. This is the law on the facts admitted. *Stewart* had no authority to sell the bills; nor could his intention to promote the interest of his principal, clothe him with legal power. An agent, constituted for a particular purpose, and under a power limited and circumscribed, cannot bind his principal, by any act in which he exceeds his authority. It would involve this principle, that one person may bind another against his consent. *Fenn* v. *Harrison, 3 Term Rep.* 757. *Wiltshire* v. *Sims,* 1 *Campb. Rep.* 258. The point is too clear for argument. It is no less extravagant to assert, that an agent may enlarge his authority, than that he can originate it.

The enquiry relative to the bills transferred by the defendant, so far as it has been pursued, is of no importance. Whether the defendant, by reason of the non-payment of any of them, has become responsible for them, or is delivered from all responsibility, by reason of the laches of the holders, can be of no avail, as to any question arising on the record. If, from any facts, or series of facts, had appeared, that the bills were of less value than their nominal amount, it would have presented an interesting question. But as nothing of this nature has been pretended, any opinion expressed would be merely *obiter*, and entitled to no consideration.

The protested bills, purchased of *Minturn* & *Champlin* and of *Davis*, infer no liability on *Elbers*. In absence of proof, it is legally presumed, that he had funds in the hands of the drawees, and that, by the omission of due notice, he was exonerated from any possible indebtedness, by reason of that transaction.

Thus far there exists no ground for granting a new trial. There remains one point to be considered, on which, in my judgment, the charge to the jury is exceptionable.

The jury were instructed, that the plaintiff was entitled to interest from the time when the defendant employed the funds of *Elbers* in the purchase of flour. Amidst the multiplicity of matter before the court, it probably was not suggested, and did not occur, that these funds were deposited in the hands of *Stewart*, to indemnify him from his bond given in the court of admiralty; and that his lien on the property had not terminated, when the bills were transferred for the flour. *Elbers* had, at that time, no right to demand them, or their avails. Until after the decree restoring the property, the lien of *Stewart* was not dissolved; nor was he under any legal obligation to account with his principal. Had it become the *duty* of the defendant to pay the money to his principal; if, through *wrong* or *neglect*, he had detained it; it would be reasonable, that interest for the detention should be allowed. *Mitchell* v. *Reynolds*, 1 *P. Wms.* 196. *Tew* v. Earl of *Winterton*, 1 *Ves. jun.* 452. *Newton* v. *Bennett*, 1 *Bro. Ch. Ca.* 359. *Codd* v. *Woden*, 3 *Bro. Ch. Ca.* 73. This principle was recognized in *Selleck* v. *French*, 1 *Conn. Rep.* 32. " Where one has received money for the use of another, and it was his *duty* to pay it over, interest is recoverable for the time of the delay; but, if the holder of money for another, is guilty of *no neglect or delay*, he will not be chargeable with interest."

It would be equally just, that the defendant should pay interest, if he had received interest, or had made a private advantage to himself out of the property. *Ratcliffe* v. *Graves*, 1 *Vern. Ch. Rep.* 197. *Lee* v. *Lee*, 2 *Vern. Ch. Rep.* 548. *Piety* v. *Stace*, 4 *Ves.* 620. *Fox* v. *Wilcocks*, 1 *Binn.* 199. But where an agent, with the consent of his principal, retains money for his indemnity, no interest is payable. *Com. Dig. tit.* Chancery, 3 S. 4. *Chan. Rep.* 264.

It has been contended, that inasmuch as the defendant sold the bills in violation of his trust, he ought to pay interest; but this consequence by no means follows. Undoubtedly, he is responsible for the property disposed of; and, so far as concerns the question of interest, ought to be considered as placing himself in the same condition as if he had received the money for the bills. If such had been the fact, the defendant would have had a lien on it; and while that lien subsisted, it would have been no part of his duty to have paid it to *Elbers*.

For the misdirection on the point regarding interest, I would advise a new trial.

The other judges were of the same opinion.

New trial to be granted.