[PHILADELPHIA, JANUARY, 1830.]

ENGLISH *against* HARVEY and another, Executors of COX,

In determining whether a legacy is charged on the land, in case of a deficiency of personal estate, the whole will must be taken together.

A legacy *held* to be a charge upon the land, from a view of the whole will.

An executor or guardian is personally liable for interest which actually comes into his hands, and which he neglects to put out, or pay over, according to his duty; but he is not liable for compound interest.

Therefore, where a testator directed, that nine thousand dollars should be put out by his executors at interest, for the benefit of a legatee, who was to be supported, and educated out of the interest, and that the surplus interest should be kept out at interest until the legatee should attain the age of twenty-one years; *Held,* that the executors were not personally liable for compound interest.

If a testator has in his life time put out the money bequeathed, at five *per cent.,* and it does not become due until after his death, the legatee is only entitled to five *per cent.* until the money becomes payable.

And generally, if the testator directs money to be put out on land security, and no more than five *per cent.* can be obtained on such security, the executor is only answerable for the five *per cent.* received.

THIS suit was brought in the Supreme Court to *December* Term, 1824, by *Charles English* against *Isaac Harvey* and *George Williams,* who survived *Thomas Norton,* executors of *William Cox,* deceased.

The declaration set forth, that *William Cox,* by his last will and testament, dated the 18th of *August,* 1810, bequeathed to the plaintiff the sum of nine thousand dollars, if he should live to attain, and when he should attain the full age of twenty-one years: That the testator appointed *Thomas Norton,* since deceased, his executor: That afterwards he died, and the defendants, with *Norton,* proved the will: That the plaintiff had attained the full age of twenty-one years, by means whereof, and by force of the act of assembly, the defendants became liable to pay the said nine thousand dollars, and promised, &c.

The defendants pleaded *non assumpserunt,* and *plene adminis-*

(English *v.* Harvey and another, Executors of Cox.)

*traverunt.* The plaintiff replied to the last plea, that the defendants had not fully administered.

On the trial, at *Nisi Prius*, before Mr. Justice Tod, on the 24th of *November*, 1829, the will of *William Cox* was given in evidence, in which the testator, after directing all just debts and funeral expenses to be paid, gave to his widow, Mrs. *Ruth Cox*, his household goods, kitchen furniture, and wearing apparel. He then gave an annuity of one hundred dollars to *Priscilla Lloyd*, during life; an annuity of one hundred dollars to *Sarah Bristol*, during life; an annuity of two hundred dollars to *Jacob Kennard* and *Mary*, his wife, during their joint lives; and an annuity of one hundred dollars to the survivor of the two last named, during life. All these annuities were directed to be paid out of the real estate.

The will then proceeds:—

" 6. *Item.* Whereas, it has been represented to me, that my late son, *John G. Cox*, deceased, has left a natural son, named *Charles English*, who was born on the 11th day of the month called *July*, 1802: That the real name of the mother of the said child is *Emily Comcey*, but that having adopted the surname given to the child, she now passes herself under the assumed name of *Emily English;* and at the time of the birth of the said child, she, the said *Emily*, lived in *Walnut* street, between *Tenth* and *Eleventh* streets. Now, therefore, I do hereby give and bequeath unto the aforesaid *Charles English*, the said natural son of my said late son, *John G. Cox*, the sum of nine thousand dollars, lawful money of the *United States of America*, to be paid to him if he shall live to attain, and when he shall attain the full age of twenty-one years; and I will and direct, that my executors *shall put and keep the said legacy of nine thousand dollars out at interest, on good and sufficient land security;* and that they, my executors, shall apply so much of the interest thereof as shall, from time to time, be necessary to the maintenance, clothing, and education of the said *Charles English*, from time to time, during his minority, it being my desire, that he shall have a good, plain, and useful education, but not to exceed a moderate knowledge of the mathematics, which will fit him to become a useful man, without his being in any wise tinctured with "philosophy, falsely so called."

" 7. *Item.* I give and bequeath to my friend, *Isaac Harvey*, the sum of five hundred and forty dollars, being the amount of one year's interest of the said legacy, bequeathed to the said *Charles English*, to be paid to the said *Isaac Harvey* in such *quotas* from year to year, as shall be the balance of the interest of the said legacy, bequeathed to the said *Charles English*, from year to year, after the costs, charges, and expenses of his, the said *Charles English's* maintenance, clothing, and education, shall thereout, from year to year, have been first deducted and paid. *And after that legacy to the said Isaac Harvey*, shall have been paid in the manner and form aforesaid, then the surplus of the interest of the said

(English *v.* Harvey and another, Executors of Cox.)

legacy, bequeathed to the said *Charles English,* beyond the expenses of his maintenance, clothing, and education, shall be put, and kept out at interest, for the benefit of him, the said *Charles English,* until he shall attain the full age of twenty-one years."

In case of the death of *Charles English* before he attains the age of twenty-one years, the legacy of nine thousand dollars is disposed of to others.

"8. *Item.* As for and concerning my house and lot, No. 40 North *Front* street; house and lot, No. 51 North *Front* street; house and lot in *Garden Alley,* commonly called *Comb's Alley,* and bank lot in *Front* street; *and generally, as for and concerning all the rest of my estate, real, personal, and mixed, not herein before otherwise disposed of,* I give and bequeath the whole income thereof to my said wife, *Ruth Cox,* for and during all the term of her natural life, she paying thereout, the taxes and necessary repairs, and also the several annuities herein before mentioned.

"9. *Item.* From and after the death of my said wife, I give the use and income of my said house and lot in *Garden Alley,* called *Comb's Alley,* in the said city, where I dwell, with the appurtenances, unto my wife's sisters, *Priscilla Lloyd* and *Sarah Bristol,* part and share alike, during their joint lives, and to the survivor of them wholly during the remainder of their natural lives, they paying the taxes thereof, and keeping the buildings in tenantable repair, and after the death of them, and the survivor of them, the same shall go into the mass of my residuary estate, as herein before devised.

"10. *Item.* As for and concerning my said house and lot in *Garden Alley,* with the appurtenances, after the death of my said wife, and her sisters, *Priscilla Lloyd* and *Sarah Bristol,* and of the survivor of them, *and also for and concerning all the rest, residue, reversion, and remainder of my estate, real, personal, and mixed, not herein before otherwise disposed of,* I do give, devise, and bequeath the same, and every part, and parcel thereof unto my friends, *Isaac Harvey, Thomas Norton,* and *George Williams,* their heirs, &c. in trust, &c., and appoint them executors."

To this will the testator added a codicil, dated *October* 6th, 1810, in which he recited, that eight thousand dollars had been lent to *Isaac Harvey* at five *per cent. per annum,* and ordered, that his appointment as executor should not operate as a release of the debt: That *Isaac Harvey* should not be executor thereof, but should account for the same to the other executors, and revoked the legacy of five hundred and forty dollars, given to him by the will.

The testator died on the 30th of *April,* 1811. An inventory and appraisement of the goods, &c. were filed in the register's office on the 22d of *May,* 1811. On the 15th of *June,* 1812, *Isaac Harvey* settled an account in the register's office, and an additional account on the 10th of *February,* 1829, both of which were confirmed by the Orphans' Court, since the institution of this suit. In *January,*

(English v. Harvey and another, Executors of Cox.)

1821, *Thomas Norton* died. In *March,* 1821, *George Williams* took out letters testamentary. On the 21st of *March,* 1821, *George Norr,* executor of *Thomas Norton,* settled his account in the register's office, and paid over the balance in the hands of Mr. *Norton* at the time of his decease, to the said *George Williams.* On the 17th of *July,* 1823, *George Williams* settled his first account as executor of *William Cox,* in the register's office. The accounts, both of *Norr,* as executor of *Norton,* and of *Williams,* as executor of *Cox,* were confirmed by the Orphans' Court, before the institution of this suit. On the 21st of *September,* 1826, *George Williams* settled his additional account, which was confirmed by the Orphans' Court.

In *February,* 1822, Mrs. *Cox,* the widow of the testator, died; since which time, *Isaac Harvey* received the proceeds of the real estate of the testator, and had the balance of the income of the real estate in his hands, after deducting the sum of one hundred dollars *per annum,* paid to one of the annuitants, who was still living, and the expenses of executing the trust.

On the 10th of *February,* 1829, *Isaac Harvey* settled his account as executor of *William Cox,* in the register's office, embracing only the income of the real estate of the testator, by which there appeared to be a balance remaining in his hands of one thousand three hundred and forty-two dollars and nine cents, which was invested, by order of the Orphans' Court, and his account confirmed.

A verdict was entered in favour of the plaintiff for three thousand seven hundred and sixteen dollars and ninety cents, subject to the opinion of the court, upon the following agreement:—

"It is agreed, that the verdict be subject to the opinion of the court on the following points, viz.—

"1. Whether the defendants have assets in their hands, and to what amount they are answerable.

"2. What balance, if any, is due to the plaintiff; and what part thereof, if any, is chargeable to the defendants.

"3. Whether the said legacy is chargeable on the real estate of the testator.

"4. Under the second of these heads, it is understood and agreed, that the court are to decide the question of interest.

"And it is further agreed, that the court, under all the evidence in the case, may amend the verdict and judgment so as to effectuate the rights of the parties, without regard to form."

*Sergeant,* for the plaintiff, cited, *Bitzer's Executor* v. *Hahn and Wife,* 14 *Serg. & Rawle,* 238. 1 *Johns. Ch. Rep.* 620. *Hassanclever* v. *Tucker,* 2 *Binn.* 525. *Tucker* v. *Hassanclever,* 3 *Yeates,* 294. *Witman* v. *Norton,* 6 *Binn.* 395.

*Chester* and *Chauncey,* for the defendants, referred to 2 *Johns. Ch. Rep.* 632. *Nichols* v. *Postlethwaite,* 2 *Dall,* 131.

The opinion of the court was delivered by

HUSTON, J.—Several questions have arisen in this case. One,

(English *v.* Harvey and another, Executors of Cox.)

whether the legacy to *Charles English* was payable out of the land, in case of a deficiency of the personal estate. Real as well as personal estate is liable to debts of every kind, due by the living or the dead, in this state; so far we differ essentially from *England.* In many parts of this state, the amount of personal property is generally small; often not enough to pay the debts, and seldom leaving much balance after paying them. The testator has been all his life accustomed to consider real and personal property as equally a fund to pay any demand, and it would not be probable, that he should forget this when making his will. In the language of the counsel, not likely that he should imagine himself in *England;* or, make a will with a view to their laws. Our courts have not adopted the rules in the old books. I would not, however, rely on the residuary clause only. "All the rest of my property, real and personal, I give," &c. It may be a clue to the intention of the testator; it may tend to show an idea of blending real and personal estate, but nothing is more unsafe than attempting to construe a will from any one clause of it. The whole will must be viewed; and it will be found necessary, often, to control very plain and positive expressions, by other parts of the will. We all agree, however, that in this case, it is apparent, that the testator intended *Charles English* should receive nine thousand dollars, and not any less sum. The time when he was to receive it, admits of no doubt; but there is a difference of opinion as to the interest on that sum, and as to the liability of the executors. The sum of nine thousand dollars was to be put at interest, on landed security; from the interest *Charles English* was to be supported and educated, and what of the interest remained after this, was again to be put at interest for the benefit of the said *Charles English,* until he arrived at the age of twenty-one years.

It has been contended, that by this will, the executors were to put out the interest every year, so as to raise compound interest; they have not done so, and for this they are said to be personally liable. No executor or guardian has yet been charged with compound interest in this court. In *Say's Executors* v. *Barns,* 4 *Serg. & Rawle,* 112, Dr. *Say* was charged with the interest he received, and interest on it up to the time of paying it over, but not compound interest. No man can, during his life, get compound interest from his debtor; and I am not sure, that any man in this country can subject those who come after him to it. The law makes executors or guardians liable, generally, for interest on money which comes to their hands, and which they ought to put out, or to pay over. I have not yet met a case where more has been given.

This testator charged annuities on his real estate, and subject to these he gave it all to his wife during her life. As long as she lived, which was till 1821, the executors could not touch it. He also gave to his wife, specifically, all his household furniture. The remaining personal estate amounted to eight thousand two hundred and seventy-five dollars. In the life time of the testator, he had

(English *v.* Harvey and another, Executors of Cox.)

lent eight thousand dollars of this to *Isaac* and *Job Harvey* at five *per cent.*, payable in 1814, and interest annually. This formed a large part of the personal estate, and the only available part for several years. As it was, by the act of the testator, put, for a time, out at five *per cent.*, the devisee must be contented with five *per cent.* on this eight thousand dollars, until the bond fell due in 1814; and generally, if a testator directs money to be put out on landed security, and no more than five *per cent.* interest can be obtained on such security, the executor is answerable only for the five *per cent.* received, and the legatee who is to get the interest can get no more.

As to the two hundred and seventy-five dollars, produced by the other personal estate, there was nothing amiss in keeping this for contingencies, so long as *Isaac Harvey* kept it.

*Norton,* the executor, deceased, had the whole fund till *March,* 1821, when his account was settled, and the balance paid over to *Williams.* The amount of *Harvey's* bond had been paid to him in 1820, and re-invested, together with the interest which had accumulated, and the two hundred and seventy-five dollars and eighty-four cents in other bonds and mortgages. *Norton* being dead, his account is only incidentally before us. We may say, however, that as his account was not excepted to, it appears final. *Williams* also settled his account, and paid over the money in his hands, and assigned the bonds and mortgages, which have been accepted. There is no ground for any charge against any of the executors, personally. As to the eight thousand dollars, and its interest, we leave the accounts as they are. So, also, as to the two hundred and seventy-five dollars and eighty-four cents of personal estate. But although the executors are not chargeable with interest on this last sum, the devisee is entitled to it out of the estate. There is something relative to a part of the proceeds of the real estate being given by the widow, or *Harvey,* to *Norton,* about *September,* 1817, to make up the deficiency in the nine thousand dollars, which I do not understand. Whatever was so paid, then, to *Norton,* and left with him, is to be taken as part of the real estate then applied towards making up the amount of the legacy. These last two sums do not, together with the eight thousand dollars, make the legacy. The deficiency must come from the real estate with simple interest; and, also, as much as will pay interest on the two hundred and seventy-five dollars and eighty-four cents, and on the sum paid by the widow to *Norton,* up to the time when these sums were paid to him. The verdict and judgment will be ascertained by calculating on these principles; and for the sum thus ascertained, there will be judgment against the executors, not personally, but to be levied from the estate of the testator.