Richardson J.
delivered the opinion of the Court.
The general legal proposition of the appellants is, that the ship-owners, Hilliard & Brooks, were exempt from their liability at common law, for the accidental loss by fire, by reason of the established usage of carriers in the particular trade, excepting them from such common law liability: or in default of such usage, that they were still exempt, by reason of express notice, that they were not to be held liable for such losses by fire, unless upon payment of certain specified and additional freight. If there was neither usage nor special contract express, or implied, arising out of such notice, to protect or exempt the defendants from the general liability of common carriers for such losses, then the plaintiff’s case would be too plain for a difference of opinion; and the verdict, legal and right, upon well established principles in the law of common carriers—that they are liable for all such losses by fire. Upon the fa cts and legal merits of this shipment and loss of t he cotton, the difficulty of the appellants is, to show how their case differs from the common case of a shipper, whose cotton is received by a boat, upon the implied contract to pay customary freight upon the safe delivery at the port of destination, but which delivery has entirely failed by some accidental fire consuming the entire cargo.
If we take Singleton’s own words, and conduct alone, his delivery of the cotton, and its receipt by the steamer Kershaw, and the destruction of ship and cargo, that so quickly followed; *215 this case is simply the case I have just supposed, and the defence would be merely specious from accidental circumstances, and of course unavailing.
But on the other hand, if there was either a usage, generally understood in such carrying trade, by steam ships between Columbia and Charleston, which would exempt the owners from losses by fire; or a general and well understood notice given by these particular carriers, Hilliard & Brooks, that they were not to be held liable for such losses by fire, without the payment of a specified sum, additional to the usual freight to be paid by the shipper; then, that is: in either the event of such a usage or such a notice, being first established, the defence would be legal and meritorious. Because, then, the usage, and equally the notice of the exception of losses by fire, would have constituted a part of the implied contract, between the shipper and the carriers, and so far as such usage or notice goes, would have limited the otherwise general and legal liability of the carrier for all losses, unless from what is meant by “the acts of God or the enemies of the State;” to neither of which classes of exemptions does the present loss belong. Upon the merits, therefore, of the appeal to this Court, we have to inquire:
1st. Whether the jury have found for the shipper without regarding the supposed usage of exemption from liability in such cases;—or 2d, have so found, notwithstanding such notice on the part of the owners, of the exception of losses by fire, which was evidently intended by Hilliard’s instructions to Sondley, in his letter of 7th November, 1843. The second of these inquiries (notice) will, of course include the question of fact—whether Mr. O’Neall, who may be assumed to have received the proper notice, was the authorized agent of Mr. Singleton, in this shipment of cotton.
On this head, it is conceded, that notice to such an agent, would, in effect, be the same as notice to Mr. Singleton, the principal. And, lastly, the Court has to decide upon the objections to the instruction of the circuit Judge to the jury, irrespective of the intrinsic merits of the defence set up on trial before the jury. For, if in either of the points of judicial *216 instruction to tbe jury, tbe Judge bas erred in law, tbe jury may bave been led into error, in their verdict, and that would be ground for another trial of the merits.
Proceeding, then, to tbe first ground to be considered, namely: The custom and usage of carriers and owners of steam boats, to be exempt from losses by fire. 1 must refer in order to avoid too much reiteration to the opinion of the Court, upon this custom, to the case of Patton v. Magrath & Brooks, in Dudley’s Rep., 163. To that opinion, I will add, that a custom or usage, intended, as in this case, to alter established rules of law, must be of very long standing, so as to imply the general acquiescence of all parties; Co. Lit., 113; whereas, this custom or usage of exemption from losses by fire, is not only of very recent origin, but has been continually resisted. See Patton’s case, in 1838, and lately, Swindler’s case, 2 Richardson’s Rep., 286; for proof of much resistance to it.
One of the characteristics of a good custom, says Coke Lit., 114, is this: “not subject to contention and dispute.” Another mark, he says, is “continuity; that is, without interruption of the right. But, as proved in the very case before us, the bills of lading often omitted the clause of “exception of losses by fire.” The Judge notices three instances.
Customs must also be certain:—-not like the rejected, because uncertain custom, of paying either two or three pence in lieu of Tithes; 2 Term Rep., 58; 1 Roll. Abi., 565; for full modern authorities upon these heads, see Wiggollsworth v. Dallison, Doug., 201, and the collection of cases in 1st Smith’s Leading Cases, 401. Upon the head of certainty, I would here ask— is this supposed custom of exemption to be bottomed upon the assumed right of the carrier, to make out bills of lading at 75 cents per bale of cotton, instead of 87|, at the option of the owners, making themselves liable in the cotton, and the shipper in the former? Supposing this right in the owners, what chance muid Singleton have to choose, which of these rates he would pay? i. e., without being informed in the plain meaning of the instructions of O. B. Hilliard, in his letter of 7th November, 1843, which is in the following terms: “I wish you to give this information to all that ship by the boat, that *217 there can be no mistake, that the 12⅛ cents is in lieu of the boat insuring the cotton. Now, if Singleton had actually received this information, directed to be given “to all that ship by the boat,” he might have embraced one or the other of the alternatives offered: and then, although the usage and custom was too recent, too interrupted, too uncertain and too unknown to limit the established liability of common carriers; yet, upon the next, and certainly more reliable ground of the defence, such information to Singleton would have borne cut the appellant’s motion for a new trial. Of course I allude to the notice intended by Hilliard for all who shipped by the boat; that they must pay 12⅜ cents additional freight, to make the owners liable for losses by fire.
Upon this second head of the defence, the law is plain and conceded. It was unanimously laid down in Patton’s case, to wit: That carriers may limit their common law liability, by contract, or express personal notice to their shippers. It may also be conceded, at least for the present purpose, that Mr. O’Neall had the information and notice required to subject himself, or his principal, to the exception of losses by fire, intended by the owners of the Kershaw, and set forth in Hil-liard’s letter. But the whole question respecting the agency of O’Neall, is, properly, to be confined to the inquiry—whether he was, in fact, the agent of Singleton to ship the cotton. Singleton attended in person, and apparently shipped his own cotton,—requiring it to go by the steamer in preference to pole boats; not a word or act of his, of O’Neall being his agent, appears from the testimony. O’Neall equally denies any agency, and is corroborated by Mr. Adger, the factor and consignee of Singleton.
It is true, that O’Neall’s letter to Adger, and his directing Anderson how the freight bill should be made out, might, very possible, implicate him in the charge, if made, that he assumed to be Singleton’s agent in shipping this parcel of cotton. But, without the concurrence, express, or plainly implied, by the words or conduct of Singleton—he cannot be bound by O’Neall’s apparent assumption of such agency: (State Bank v. Johnson, 1 M’C., 404.) And he is assured! v *218 as little bound, by the mistaken conclusion drawn by Hilliard & Brooks, of O’Neall’s agency. Such a conclusion must have been drawn from O’Neall’s seeming interference in the shipment; by directing the manner of the freight bill, and his advice to Adger, and not from Singleton’s conduct in a single fact proved. Agency, or the liability of one man for the acts of another, must be plainly proved, according to the nature of the case and the subject; see Story’s Agency, p.; Bacon Prin. and Ag’t. But if any doubt existed as to O’Neall’s agency, it has been settled in the negative by the verdict for the plaintiff. Having disposed of the supposed usage, as entirely too recent and uncertain to limit the carriers liability, and of the supposed notice to Singleton, by reason of the imputed agency of O’Neall, who had himself received the notice, we come lastly to the supposed legal errors of our late brother Butler, the presiding Judge. First then: Ought he to have ordered a non-suit? It is too plain for argument, that the plaintiff had a prima facie case, that must pass to the jury, and not be turned out of Court by a non-suit. 2d. Was the Judge mistaken in charging, that the owners might avail themselves of the supposed usage, by showing that the cotton had not been burnt by their negligence. But it is plain, that in this the Judge might have well charged, in the much stronger language of the Court, in Swindler’s case, to wit: “I would hold him” (the carrier) “to strict proof of diligence and care in avoiding any loss to the owner, by so dangerous an element as fire,” &c. It must be in the words of that decision, “such fire as care and diligence could not avoid,” &c.; 2 R., 305. And the good policy and necesssity of requiring at least, so much of the carrier, is obvious; and in the proper spirit of the strict law of common carriers. The two other points of objection to the Judge’s charge, relate, the one to the application of the supposed usage, if any such existed, to the shipment of the cotton, and the other to the supposed agency of O’Neall; both of these, as facts, have been well decided for the plaintiff. But this Court perceives no error in the Judge’s instructions, on either of those points under any view of the evidence of the usage, or of the agency of *219 O’Neall; he left both the usage and the agency without the restriction supposed in the grounds of appeal. The Judge charged that, “before the plaintiff could be subjected to all the liabilities of a contract entered into by Sondley and O’Neall, the jury should be satisfied that O’Neall was the legal agent, or authorized representative of plaintiff.” Doubtless it would have been sufficient to have inferred such agency from the conduct of Singleton and O’Neall, though not from the conduct of O’Neall alone. Such was the very question. But the Judge puts no restriction upon it as supposed in 1st ground of the appeal. In this decision upon the appeal, I have not considered it necessary to rely upon the fact, that on the day before the cotton was shipped, the Rail-Road had reduced their freights to 75 cents per bale; which would seem to imply, from the principle laid down by the owners, according to Sondley’s evidence, that 75 cents covered the insurance, as well as the carriage oi the cotton. Nor have I urged the very different understanding of Villipegue and Sondley, of what was the true meaning of Hilliard’s instructions to those two agents. Villipegue’s advertisement on the subject was as follows:
“Steam-boat notice.—The proprietors of the Steam-boat line plying from Camden and Columbia to Charleston, have made arrangements with the Augusta Insurance and Banking Company, to insure all cotton shipped by their boats from the above places, inform their friends and the public generally, that bills of lading for cotton will be given by the agents at Camden and Columbia, free of all risks, both from fire and the navigation, without additional charge.”'—D. F. Villipegue. Agent.
From this advertisement in the Camden paper, I cannot conceive that any one could understand that the shipper had to pay 12⅜ cents on each bale, in order to render the owners of the steam-boats liable for losses by fire, as Mr. Sondley would appear to have understood from the same instructions.
But still another fact appears worthy of notice: Mr. Anderson, another agent at Columbia, knew nothing of Mr. Villi-pegue’s advertisement in the public papers—shall we then *220 readily assume that shippers had more knowledge of it? and does not all this uncertainty show the necessity not only that customs and usages should be plain and distinct, ancient and certain, before men shall be required to know them as constituting the law of their contracts. But, also, that he who would, by virtue of a special contract, derogate from his legal liability, is bound to give explicit information, in the language of Hilliard’s letter to Sondley, to all of the precise limitation intended. Such facts are auxiliary proofs of the general argument to support the verdict.
To conclude then—strip the plaintiff’s case of the imagined usage, and of the imputed agency of O’Neall, and it is stript of both by the verdict. And what is the case, but that of a man shipping his cotton on a steam boat, paying customary freight, which cotton has been destroyed in the boat by fire, and the owner of course liable. Therefore the motion is dismissed.
O’Neall J., Evaxs J., Frost J., and Withers J., concurred.