An administrator is chargeable with interest, where he has been guilty of neglect in not putting out the money of the intestate, or has used it himself; and it lies upon him to shew what has been done with the money. But he is not liable to interest until after twelve months from the death of the intestate.

# Fox administrator of HOCKLEY *against* WILCOCKS and others.

THIS was an appeal from the Orphan's Court of the city and county of *Philadelphia.* Mr. *Fox* the appellant, who was acting administrator of *W. B. Hockley,* settled his account in the register's office, from which it was passed to the Orphan's Court for confirmation. With consent of the parties, it was referred by that court to auditors for examination and statement; and the appellees, who were next of kin to the intestate, gave notice to the administrator, that he would be required to produce to the auditors the bank book of his administration, and to state on affirmation whether he had used for his own purposes any and what monies of the intestate. At the meeting of the auditors the dispute turned upon two points, the amount of compensation allowed to the administrator in the register's office, which the next of kin said was too great, and a credit which was claimed by the next of kin for interest upon sums they alleged to have been a considerable time in the administrator's hands; but Mr. *Fox* refused to produce his bank book, or to make the required statement upon affirmation. The auditors allowed the compensation as it stood; and although they refused the credit for interest as it was claimed, they nevertheless charged Mr. *Fox* £150 as a reasonable compensation for any use he *could* or *did* make of the money remaining in his hands during his administration; reporting at the same time, that it did not appear he was ever unprepared to pay any money legally demanded of him. To this report both parties filed exceptions; the appellant, that he had been charged with any sum in the shape of interest; the appellees, that he had not been charged enough; but by agreement the report was confirmed, and an appeal made to this court, to obtain a decision upon the principle that was to govern the case.

*Rawle* for the appellant. The charge of £150 is wrong upon the face of the report; for the auditors have reported that the administrator was never unprepared to pay money upon demand; and from their silence it is clear there was no proof of

his having used it. Considering him then as a *trustee* for the next of kin, it is settled law in *Pennsylvania*, that, under the case put, he was not liable for a cent of interest; *Knight* v. *Reese;* (a) and as an administrator under the act of 1713, he was chargeable with interest only on the surplus of the decedent's estate remaining in his hands, " when the accounts of his administration were " or ought to have been settled and adjusted." 1 *State Laws* 101. *sec.* 6. There is no allegation of delay in the final settlement of his account; and although an administrator may apply to the Orphan's Court for their leave and direction to put out any money belonging to minors, yet gross negligence must be shewn, to charge him with interest for the omission.

*C. J. Ingersoll* for the appellees. The precise question in this case is, whether an administrator is not liable to pay interest after refusing to produce the bank book of his administration monies, or to state on oath whether he has applied them to his own purposes. The Orphan's Court proceeds in many respects like a court of equity. It has a variety of its forms and powers; and may enforce obedience to its orders and sentences by sequestration and imprisonment. It is indeed no where specially invested with authority to appoint auditors; but as they are necessary to give effect to the jurisdiction of the court, their appointment must be supported; and they must judicially be considered as representing the body from which they emanate. As therefore, in contemplation of law, it is the court that examines and states the account, and as its authority to order the production of books and a statement upon oath cannot be questioned, the same was within the power of the auditors, who are instruments and representatives of the court. Upon a refusal to produce the books and to make the statement upon oath, every presumption arises to support our claim to interest; as, that the administrator used the money for himself, or suffered it improvidently to lie in his hands unemployed. *Manifestæ confessionis est nolle jurare.*

In either of these cases he was liable to pay interest by the law of *Pennsylvania*, and according to the doctrines of every system of law whose foundation is reason. By the 4th section

*(a)* 2 *Dall.* 182.

1806.

Fox
v.
Wilcocks

of the act of 1713, an administrator may put out the money of minors to interest, upon such security as the Orphan's Court shall approve; and if *no person can be found* who is willing to take the money, then he shall be responsible for the *principal only*. But the necessary implication of this section is, that if he omits to make application to the court, or cannot shew an exertion on his part to find a person willing to take the money, he shall be responsible for the interest as well as the principal. The sixth section is still stronger; for it expressly charges him with interest upon the surplus in his hands after his accounts are or *ought* to be settled; which by the existing law should be done within a year from the date of his administration. All our acts in *pari materia* shew the design of the legislature to charge administrators with interest, if they do not put the money out; 4 *St. Laws* 151; *a fortiori* where they use it themselves.

The *English* doctrine applies with peculiar force; for in *England* an executor or administrator is allowed nothing for his care and trouble; and there is therefore one inducement wanting in that country to charge him with interest, which exists here. Now the authorities from the time of *Charles the second* to the present day, with a few deviations, concur in settling the rule, that administrators shall pay interest for money which they either employ for themselves, or are negligent in not employing at all. The liability to pay interest in the one case, results from its being a breach of duty in the administrator to neglect making it; in the other, it is a dictate of the plainest equity, that the profits of a capital, or at least something in lieu of them, should be paid to the proprietor of the fund; and to compel from the administrator a disclosure of the facts, it has become a standing rule of presumption in Chancery, that the money has been used by him, unless he states, under oath, what has been the particular disposition made of it. *Hilliard* v. *Gorge* (a), *Ratcliff* v. *Graves* (b), *Landen* v. *Green* (c), *Attorney general* v. *Corporation of Stafford* (d), *Lee* v. *Lee* (e), *Bird* v. *Lockey* (f), *Wilkins* v. *Hunt* (g), *Newton* v. *Bennet* (h), *Treves* v. *Townsend* (i). *Littlehales* v. *Gascoigne*, (k) fixes the

(a) 2 *Chan. Cas.* 235.

(b) 1 *Vern.* 196.

(c) *Barnard. Ch. Rep.* 389.

(d) *Id.* 36.

(e) 2 *Vern.* 598.

(f) 2 *Vern.* 744.

(g) 2 *Atk.* 151.

(h) 1 *Bro. Ch. Rep.* 359.

(i) *Id.* 384.

(k) 3 *Bro. Ch. Rep.* 74.

principle on a broad and liberal ground. " An executor's pay-
" ing or not paying interest," said Lord *Thurlow*, " depends
" on its being necessary for him to keep the money to answer
" the exigencies of the testator's affairs, or not; but where he
" holds the money longer than is necessary, he must answer
" interest." And in *Franklin* v. *Frith*, (a) the point of interest
was abandoned by the counsel for the executors. *Piety* v.
*Stace*, (b) and *Pocock* v. *Reddington*, (c) are both to the same
purpose, and in point.

1806.

Fox
v.
Wilcocks

The civil law adopts the same principle. *Denizart tit. Inte-
rêt.* 11. 51. 53, 54. *tit. Tuteur,* 61, 2, 3. 6. 9. 2 *Pothier de
Bienf.* 36. 48, 49.

*Lewis* in reply. The question is properly stated by Mr. *In-
gersoll*; it is whether the mere refusal to produce bank books,
and to make a statement upon oath, should be admitted as evi-
dence that the administrator used the money, or kept it by him
too long. Now it is clear the presumption from this refusal
must be at an end, if there was no authority in the auditors to
demand a compliance; and this of itself hardly admits an argu-
ment. Auditors are not known to the law; their appointment is
good only by consent of parties; and they cannot proceed a step,
if the administrator chooses to recede. The Orphan's Court
itself has no power to tender him the oath, or to compel his ap-
pearance before auditors; such authority is no where found in
the law, and there has never been an instance of it in practice.

The cases from the *English* books cannot of course apply,
until more matter is before the court; and whenever there is
occasion to apply them, it will be found that those which bear
the most severely upon administrators, charge them with in-
terest only where they have used the money, or kept it by them
a *long* time; that is, in case of fraud or gross negligence.

Tilghman C. J. delivered the opinion of the court.

It appears that *S. M. Fox*, the acting administrator of *W. B.
Hockley*, settled his administration accounts with the register,
which were transmitted, as usual, to the Orphan's Court, by
whom, with the consent of the said administrator and next

(a) *Bro. Ch. Rep.* 433.
(b) 4 *Vez. jr.* 620.

(c) 5 *Vez. jr.* 794.

1806.    of kin, the accounts were referred to auditors. On appearance
_____    before the auditors, there was no dispute concerning any item
Fox      charged in the administration accounts: but the next of kin ob-
*v.*     jected to the commissions allowed the administrator, and they
WILCOCKS claimed interest for sums of money, which they alleged had
remained a considerable time in his hands. The auditors were
of opinion that the commissions allowed the administrator were
reasonable; and that the administrator should be charged with
150*l.* as a just and reasonable compensation for any use which
he *could* or *did* make of the money remaining in his hands,
during the course of his administration; and they declared at
the same time, that it did not appear that the administrator
was ever unprepared to pay any money legally demanded of
him.

The next of kin and the administrator were both dissatisfied
with this report. Both filed exceptions; and it was agreed that
the report of the auditors should be confirmed by the Orphan's
Court without prejudice to either party, in order to afford a
ground for an appeal to this court: on which appeal every objec-
tion was to be heard, that could, under the exceptions filed, have
been made to the report of the auditors in the Orphan's Court.

The next of kin excepted, that the administrator had large
sums in his hands for a long time; that they called upon him to
produce his bank book before the auditors, and to answer on
oath, whether he had made use of any, and how much money
of the deceased, and for what length of time; both which he re-
fused to do: that in consequence of this, they were entitled to
interest on the sums which so lay in the hands of the adminis-
trator; but that the auditors refused to allow interest.

The administrator excepted, that the auditors charged him
with 150*l.* interest, although they state, that it did not appear,
that he was ever legally called on for money on account of the
estate, which he was not ready to pay.

What I consider as the principal point in this case, is, whether
the administrator is liable to interest, for the sums of money,
which from time to time remained in his hands, before the set-
tlement of his accounts.

By the act of 1713, *sec.* 4. (*a*) it is enacted that "executors, ad-

(*a*) 1 *St. Laws* 98.

" ministrators, and guardians, may, by leave and direction of the 1806.
" Orphan's Court, put out their minor's money to interest: but
" if no person can be found to take it, who will give good secu-
" rity, they shall only be responsible for the principal." By the
same law *sec.* 6. "they shall only be liable to pay interest on the
" surplusage of the estate remaining in their hands, when the
" accounts of their administration are, or *ought to be*, settled be-
" fore the Orphan's Court or register."

Fox
*v.*
Wilcocks

It is therefore the duty of executors, administrators, and guardians, not to let money remain unemployed in their hands: and by fair implication from the words of this act of Assembly, if they do through negligence suffer it to remain unemployed, they are responsible for interest: much more so if they use the money for *their own purposes.* As the law expressly declares that they are only liable to pay interest on the balance in their hands, when the administration accounts are *or ought to be* settled, it should seem that they are not liable to interest during twelve months from the death of the intestate, since that period is reckoned reasonable for the settlement of those accounts.

To lay down rules, by which it may be ascertained in every case, whether administrators shall pay interest on balances in their hands, is impossible; because every case depends on its own circumstances. But I think it may be established as a principle, that interest is payable, where the administrator has been guilty of neglect in not putting out money, or where he has made use of it himself. (*a*) Both the act of Assembly and the principles of universal reason concur in this; and it is agreeable to the authorities cited from the law of *England,* and the civil law. Still it remains to be decided by the facts in each case, whether the principle is applicable. As to the auditors, no law has been shewn, which satisfies me, that they have power to call for the oath of the administrator as to the use he has made of the money, or to demand the production of his books. At the same time I cannot help remarking, that the administrator should reflect well before he declines the offer of his adversary, to appeal to his own books: because *it lies on him,* to shew what has been done with the money; and unless he does shew it, in a satisfactory manner, he leaves himself open to the conclusion, of having used it for his own purposes.

(*a*) *Vide Granberry's Executor* v. *Granberry,* 1 *Wash.* 246.

1806.

Fox
*v.*
Wilcocks

The Court having given their opinion on the point of law submitted to them by the exceptions, it remains for the parties to determine, whether they will acquiesce in the report of the auditors, (men certainly of excellent character and experience in business) or proceed to a further investigation of the accounts.

YEATES J. and SMITH J. were not present at the argument; nor at the delivery of the court's opinion.