[ PHILADELPHIA, APRIL 11TH, 1840. ]

## STEM'S APPEAL.

Where a guardian received from the administrators of his ward's father a promissory note given to himself by a debtor to the estate, in lieu of an old note which the debtor had given to the intestate ; and the debtor afterwards became insolvent; it was *held,* that the guardian was not liable for the loss; although there was evidence that the money might have been collected if he had required payment at the time the note was transferred to him.

THIS was an appeal from a decree of the Orphans' Court of North-ampton County, in the matter of the accounts of John D. Bauman, guardian of Benjamin F. Stem, a minor.

It appeared that Jacob Stem, the father of the ward, died intestate, leaving several children and some personal property, including debts due to him. The administrators assigned these debts to the guardians of the children in proportion to their interests in the estate.

On the 19th of April, 1839, the accounts of J. D. Bauman, guardian, were presented to the Orphans' Court; in which he charged himself with the proportion of his ward of certain judgments assigned to him by the administrators, and also with the following:

" 1832, December 1st.—On this day the said administrators also procured from David Heimbach, Jr., his note for the amount of his indebtedness to the estate of the deceased, viz. eight hundred and seventy-seven dollars and eleven cents, with interest, payable in six months, which they handed over to the accountant; the said D. Heimbach, Jr., afterwards died and his estate proved insufficient for the payment of his debts; a dividend of thirty-three per cent. was declared amongst the creditors, on the amount due them, 1st of April, 1837, at which time this note amounted, with interest, to one thousand one hundred and five dollars and thirteen cents. Dividend three hundred and sixty-four dollars and sixty-nine cents. Each ward's share is one hundred and eighty-two dollars and thirty-four cents."

The following exceptions were filed by the ward.

" 1st. The accountant neglects to charge himself with, and craves

credit for one-half part of the loss accruing upon a certain note of David Heimbach, Jr. taken in the sum of eight hundred and seventy-seven dollars and eleven cents, without security, as part of the share due to the said Benjamin F. Stem, of his father, Jacob Stem's estate. Which note was improperly taken, and the loss on which occurred by the neglect of the said John D. Bauman.

2d. The accountant does not charge himself with interest upon the said note, although the said note remained in his hands for two years or thereabouts.

3d. The interest calculations are not sufficiently explained."

Evidence was taken in the Orphans' Court in support of and in opposition to the exceptions; the material part of which was as follows:

Peter Stem testified. " I think the most of these receipts amounting to two thousand dollars, were paid in notes which my brother had against other people. This note of David Heimbach Jr. was one of them. I drew up the note myself. He was indebted to my brother's estate. He was considered in good credit. Major Bauman, Mr. Snyder and the other guardians agreed to take such papers as we afterwards gave them. There was something said about judgments, and it was said by some of the company, that the Heimbach's would not be willing to give judgments. Mr. Heimbach was in the iron business—a farmer also, and kept a little store at the furnace and forge. The works were all together. I then went and got the notes afterwards, (note produced.) This is the note, (dated 1st December, 1832, at six months for eight hundred and seventy-seven dollars and eleven cents, with interest.) This note is included in the receipt." Cross-examined. " We told them if they would not take the paper we would go at it and collect the money. We had called them together for that; I do not know that Major Bauman picked out Heimbach's, but he agreed to take it. I considered that as so much paid to the guardian's. Bauman agreed that I should take a new note for Heimbach's indebtedness to Bauman. I do not know whether he or I proposed it, but it was done and he took it.

Peter Snyder testified,—" I was present at the meeting of the guardians at Stem's. I am guardian for Oliver. The papers were laid before us. The administrators said we should take what we wanted, and what we did not take, they would collect. There was something said about David Heimbach. It was said that he would rather pay than give judgment. We did not get the papers that day, but agreed to take them. I received mine. I knew Heimbach—lived between six and seven miles from him. He had a forge and furnace, kept a store, and farmed. I always called his credit good. I lent him money often. I first lent him money in 1832, and took no security. I lent him money afterwards, and after this took place, and took no

security. I lent him eleven hundred dollars in 1822. I got money from him six weeks before his death. He was only sick two or three weeks. He was a middle aged man when he died. He did not leave enough to pay his debts, which was unexpected, I believe." Cross-examined. "I believe Bauman agreed to take Heimbach's note. We considered the papers as money. The money could have been got from Heimbach at any time. He had property, and it might have been secured. He paid all the debts he was pushed for. He paid me without trouble. Heimbach had a large real estate. His land was pretty fairly sold, but it would bring more now, a good deal."

Abraham Gish testified:—"I knew David Heimbach, Jr. for several years. The last year before his death, I heard it rumoured that he was in debt. About a year before Heimbach's death, I heard it said he was in debt: he could not stand it. I think I would not have trusted him six months before his death to any large amount without security. About six months before his death people began to speak of his circumstances, and say it was doubtful if he would ever get through and pay his debts. I did hear people mention that. I do not know of Heimbach's sustaining any heavy losses the last two years of his life." Cross-examined.—"David Heimbach Jr. did a large business, and must have handled a good deal of money up to the time of his death. I was a justice of the peace residing about nine miles from him. He never was sued before me. I lived in Lehigh township, below the Blue Mountain. John D. Bauman lived in Towamensing township, the same township in which Heimbach lived, but about as far from him as I did. His business was that of an iron master and storekeeper."

Adam Kuntz testified that he was one of the administrators of Jacob Stem, deceased—"In 1832 the guardians of the minor children of Jacob Stem, deceased, met at the late residence of Jacob Stem. John D. Bauman appeared as guardian of Benjamin F. Stem and James M. Stem. They, the guardians, inquired what we wanted with them; we told them we had some notes and judgments due to the estate of Jacob Stem, deceased. We inquired whether they would take those claims for the shares of their respective wards, or whether we should collect the money for them. Jacob Kern, Peter Snyder and John D. Bauman were the three guardians who were there: they said we need not collect the money; that they would lend it out again; they said we should get the notes and judgments in their names and they would take them. John D. Bauman agreed to take Heimbach's paper—it was a common promissory note— we offered to collect the money for the guardians if they were unwilling to take the paper." Cross-examined. "I had Snyder and Kern to attend to. Peter Stem, the other administrator, attended to Bauman and John Stem, who was the guardian of Mary Ann

Stem. Peter Snyder was guardian of Oliver, and Kern of Harriet. I did not hear all that passed between Peter Stem and John D. Bauman. I was not present when the notes were delivered to John D. Bauman, that I know of. I saw him give him some papers once. I do not recollect Bauman's requiring judgments, nor do I recollect Peter Stem saying that Heimbach would not give judgment. I was present at the time the arrangement was made for the division of the securities among the guardians, but not when Bauman got those which were delivered to him. I had heard nothing to doubt the credit of David Heimbach, Jr. at that time. I never heard any thing to induce me to doubt his credit as long as he lived. I lived in Lehigh township up to the time of the death of David Heimbach, Jr."

George Wentz testified that he was well·acquainted with David Heimbach, Jr., late of Towamensing, deceased, and lived within about five miles of him from the time Heimbach came to Towamensing, being several years. "Heimbach carried on a forge and furnace, and had a fine farm with it, and was considered a smart business man, doing a good business. I always so considered him, and shortly after Jacob Stem loaned him money, I sent to him to ask if he did not want to borrow more—and I loaned him two hundred and forty dollars, taking only his own note for it; and if I had had more money to spare I would have loaned it to him. He paid me some money back, leaving due to me at the time of his death about one hundred and sixty dollars." Cross-examined. "I lost money by D. Heimbach, about one hundred dollars. Heimbach had my money about seven or eight years; he paid me the interest. I also collected some of the principal."

William Heimbach testified, that he was a son of David Heimbach, Jr., deceased, who in his lifetime, and up to the time of his decease, carried on the business of an iron master at Clarissa works, consisting of a furnace and forge, in Towamensing township, Northampton county, where he died on the 29th day of November, A. D. 1834.

John A. Ziegenfuss testified that he was well acquainted with David Heimbach the younger, now deceased. That Heimbach was an iron master in the township, doing a very extensive business as such. He was reputed and believed to be a man in very good circumstances, and his credit and standing as a monied man were well established and good. He had a furnace, forge and store, and no one doubted but that he was doing a safe and profitable business; and so he continued up to the time of his death. That he had considerable dealings with David Heimbach, Jr., and was constable of the township; and that he would not have hesitated to trust himself to any reasonable amount. Cross-examined. "I knew Heimbach

borrowed money, to carry on his business, as I suppose. He borrowed eighty or one ·hundred dollars from me and my brother, I think about two years before he died. Does not know that he met with any heavy losses the last two years of his life ; he had some difficulty with his furnace ; it stopped a couple of times. Some of the hands at the iron works complained sometimes that they could not get money from him."

The Orphans' Court, after argument, dismissed the exceptions on the 23d of August, 1839, and confirmed the account.

This appeal was then taken by B. F. Stem.

Mr. *A. E. Browne,* for the appellant, cited *Konigmacher's Appeal,* (1 *Penn. Rep.* 207.)    *Pym* v. *Downing,* (11 *Serg & Rawle,* 72.) *Brown* v. *Jackson,* (2 *Wash.* C. C. *Rep.* 24.)    *King* v. *King,* (3 *Johns. Ch. Rep.* 552.)    *Smith* v. *Smith,* (4 *Johns. Ch. Rep.* 284.) *Thompson* v. *Brown,* (*Id.* 619.)   *Harland's Accounts,* (2 *Rawle,* 223,) *Willis on Trustees,* 182, &c.

Mr. *Maxwell* and Mr. *Hepburn,* contra, cited 2 *Madd. Chan.* 133 ; *Johnson's Appeal,* (12 *Serg & Rawle,* 324.)   *Calhoun's Estate,* (6 *Watts,* 189.)   *Knight* v. *Earl of Plymouth,* (3 *Atk.* 480.)    *M'Nair's Appeal,* (4 *Rawle,* 148.)   1 *Swanst.* 87.

The opinion of the Court was delivered by

Sergeant, J.—This case does not seem to be distinguished from *Konigmacher's Appeal,* (1 *Penn. Rep.* 207.)    There the duty and liability of a guardian as to the investment of the money of his ward was carefully considered by this Court; and the rule is stated to be, that if a guardian has on hand money of his ward, and puts it out, he will generally be liable, unless he takes a surety in the note. Wherever he has the fund and disposes of it to another, he must do it with strict and proper caution, as a prudent man would, and is seldom safe unless he takes security.  But where the fund never comes into the hands of a guardian, all the cases make a difference : he is not bound instantly to sue in all directions.   In that case the guardian, on the settlement of the administrator's account, received part in money, and took the administrator's bond for the residue, and part of it was lost.  Yet he was not held to be thereby chargeable, as having been guilty of negligence.   In the present case, likewise, the money never actually came to the hands of the guardian.   He received from the administrators, on his ward's account, a new note of a former debtor in lieu of the old note, payable to himself, and endorsed as received on his ward's account.   It is true he was told by the administrators that he might take that, or if he did not choose to do so, they would go and collect the moneys ; and there is reason

(Stem's Appeal.)

to think they might have collected it. But still the case is not the same as that of money actually put into the guardian's hands, of which he makes a new investment. For in *Konigmacher's Case,* the guardian received the bond of the administrator, a new security, instead of the money which the administrator was liable to pay, and for aught that appears, might have been compelled to pay. I do not see any principle applicable here that did not apply in that case. At the same time I would not be willing to extend the decision further; and wherever the money came into the gurdian's hands, or immediate control, would hold him strictly to the rule that requires him to take security. And even in cases of a continuing or renewed security, he may, under the particular circumstances, make himself responsible for laches in receiving it, or not collecting it in due season.

On the whole, we think the decree of the Orphans' Court must be affirmed, with the exception of the interest on this money down to Heimbach's death, which the guardian ought to have collected, and for which therefore he is chargeable.

Decree accordingly.