176 So. 465

## BIRMINGHAM TRUST & SAVINGS CO. v. ANSLEY et al.

### 6 Div. 930.

Supreme Court of Alabama.

Oct. 14, 1937.

Rehearing Denied Nov. 4, 1937.

Bradley, Baldwin, All & White and Kingman C. Shelburne, all of Birmingham, for appellant.

676

Crampton Harris and Harold M. Cook, both of Birmingham, for appellees.

BROWN, Justice.

This appeal is from the final decree entered by the circuit court, sitting in equity, in response to the prayer of the bill filed by one of the cestui que trust against the defendant as trustee and another, declaring a breach of the trust, and requiring the trustee to account for the specific fund contributed by the complainant to the trust fund.

The trust, as the bill alleges, arose from the fact that the complainant placed in the hands of the alleged trustee money, the proceeds of insurance on her husband's life, to be loaned at interest to complainant's use, and the acceptance by said defendant of the agency and the trust incident thereto. The breaches alleged are that the trustee, wholly disregarding complainant's interest, parted with the fund without adequate security, and from time to time, by false and reckless assurances that the loan was safe, lulled complainant into a sense of security, while in truth and fact the security was wholly inadequate, and was negligently allowed to depreciate and go to waste.

The defenses set up in the defendant's answers, to state the same in substance only, are: First, that there was no relation of trust and confidence between the defendant bank and the complainant; that the loans were made by the complainant through her personal friend, Mr. T. O. Smith, who was not acting for the bank, though he was then its president, but on his individual capacity as a friend of the complainant; and, second, in the deed of trust executed by the defendant Blair, to the bank as trustee it was stipulated that the trustee was under no duty to look after the safety of the security, and protected itself against liability for all acts of omission or commission, except liability for "wilful disregard of duty."

The complainant, Mrs. Ada Lee Williams, formerly Mrs. F. H. Ansley, died pendente lite, and the cause was revived and prosecuted to final decree by her executrices. In the further treatment of the case in using the word "complainant," we refer to the original complainant.

After painstaking examination of the voluminous testimony covering several hundred pages, disregarding that excluded by the circuit court on the defendant's objection, we find evidence sustaining the conclusion of liability expressed in the final decree.

We now state briefly some of the inferences and conclusions which the evidence justifies.

That a relation of trust and confidence arose between the complainant and the defendant bank in 1923, soon after the death of complainant's first husband, at which time complainant, through checks issued to the bank on her deposit therein,

turned over to the bank $1,800 to be loaned at interest. The bank loaned this money, nominally to Zoe S. Blair, a person in equivocal financial circumstances, pretending to take a mortgage on suburban property outside of the fire limits, consisting of three or four acres, irregular in shape, a block or more in distance off the traveled thoroughfare, fronting on a street car line considerably elevated above the level of the property, on which was located an antiquated dwelling and some negro shacks all in bad repair, on which there was an existing mortgage of long standing for a debt which had not been reduced, but had been allowed to accumulate from $1,600 to $1,800.

That written application for the loan showing the nature and character of the security offered and the use for which the money was being borrowed was not required, as was done when the bank made loans of its own funds. No appraisal of the property was made and so far as appears no examination of the title.

The nominal borrower, Mrs. Blair, executed some papers which her daughter, who was an employee of the bank, presented to her but she did not know what the papers were. She received none of the money.

The papers executed, the evidence shows, were a mortgage on said above-mentioned realty in which the nominal borrower held the equity of redemption. The mortgage was delivered to the daughter and the daughter kept it in her possession until she was called on to produce it as evidence by the defendant. The complainant had no dealings with the nominal borrower and knew nothing of the mortgage until shortly before the filing of the bill, and made no investigation thereof, but rested on her implicit confidence in the defendant bank to protect her interest.

At the time of the above-mentioned loan, the property was occupied by Mrs. Blair and her three daughters, all of the daughters being employees of the bank, and the daughters paid the interest semi-annually to the bank, and it was passed to the complainant's credit on her deposit account.

In 1925, the loan was increased to said nominal borrower, without requiring the usual written application, complainant contributing to the loan through the bank an additional $1,200, and the Munger foundation, through Mr. A. W. Smith, an officer of the bank, contributed $1,000, making a total loan of $4,000.

At this time the bank took a deed of trust to itself, on the property above mentioned, embodying the exculpatory clauses pleaded in defense of liability. At this time the written application usually required by the bank was not made; there was no appraisal of the property; and so far as appears no examination of the title; and the bank did not take the precaution to see that the money advanced as a loan by it reached the hands of the nominal borrower, Mrs. Zoe S. Blair. She testified that not a cent came to her. The evidence goes to show that the additional loan was delivered to the Blair girls, who used it in purchasing a residence in the City of Birmingham, to which they with their mother moved immediately, abandoning the suburban property.

Soon thereafter the insurance was canceled, the property was neglected, some of the shacks burned, others were sold off the property, and the old residence allowed to depreciate.

The fact that the insurance was canceled was brought to the trustee's notice. The complainant was not informed and had no knowledge of the property or its location, and had no dealings and did not know the nominal borrower. That the complainant had no knowledge of the contents of the trust deed or of its existence except such as might be imputed by its recordation in the probate office.

That the loan was in fact made to the Blair girls without enforceable legal obligation on their part to repay the same. The title to the property purchased by them, with the additional loan, was taken in their name.

A short time before the original bill was filed, Miss Virginia Blair notified the complainant that she could pay no more, and offered to quitclaim the property covered by the trust deed in settlement of complainant's debt, and the debt of the other cestui que trust. This, the complainant, after examining the property, refused to do. There is evidence going to show that the property was wholly inadequate security for the loan.

At some time after the loan was increased the Munger foundation was allowed to withdraw the $1,000 advanced, and a Miss Taliaferro, through Mr. A. W.

Smith, supplied the withdrawal by advancing $1,000 in lieu of that so withdrawn. Of this transaction the complainant had no knowledge. Some phases of the testimony given by Mr. Smith justifies the conclusion that Miss Taliaferro has been repaid the advance, while other phases are to the contrary.

The appellants' major contention here is that Miss Taliaferro or A. W. Smith, her trustee, one or both, are necessary parties to the bill.

The final decree, under complainant's offer to do equity, required that her executrices, now parties complainant, release and quitclaim any interest they may have in the alleged trust property to the defendant bank, with which appellees assert in argument they have complied.

■ "The rule that in suits by or against trustees concerning the trust property the beneficiaries are necessary parties in order to be bound has many exceptions, and is by no means arbitrarily enforced, but is controlled by convenience and necessity, with a just regard to the peculiar circumstances of each particular case. Thus where there is a definite and fixed trust fund, in which each of the beneficiaries is entitled to a certain and aliquot part, distinct from the other so that there is no common interest in the object of the bill, all of the cestui que trust need not be joined in a suit involving only one individual share." 26 R.C.L. p. 1344, § 209; Caldwell v. Taggart, 4 Pet. 190, 202, 7 L.Ed. 828; Piatt v. Oliver, Fed.Cas.No. 11,115, 2 McLean 267, 307; Pewyon Trust, § 882; Atwood v. Rhode Island Hospital Trust Co. (C.C.A.) 275 F. 513, 24 A.L.R. 156.

■ Neither Miss Taliaferro nor A. W. Smith as her trustee are affected by the issues settled by the decree, and they were not necessary parties to this suit. Hodge v. Joy, 207 Ala. 198, 92 So. 171; Prout v. Hoge, 57 Ala. 28.

■ The appellants' next contention is that the bill is defective and subject to the defendant's demurrers in failing to show that the complainant had made tender and offered to return all she had received from the defendants as a predicate to a rescission. It is a sufficient answer to this contention that the bill does not seek a rescission of the contract out of which the trust arises, but seeks to have the court judicially determine and declare a breach of the trust, make discovery, and require the trustee to account. The demurrers to the bill were not well taken and were properly overruled.

The next and final contention of the appellant is that there was a failure on the part of the appellees to sustain by competent legal testimony all the material averments of the bill.

■ The law applicable, in such cases, seems to be well settled, to quote from 26 R.C.L. 1323, § 186: "In general, all trustees who have the custody of money are held to be exempt from liability for the loss of funds occurring without their fault or negligence, and this is so regardless of the form or character of the bond which they may have given, or the statutes or order of court prescribing their duties. Such trustees are held merely to the diligence and care which a prudent man ordinarily uses in his own concern. * * * However, if he does not strictly pursue the line of his duty, and a loss ensues, he will be liable to make that loss good, although such loss may have been wholly unexpected. And a trustee is liable for gross negligence, and for his own acts, in not carefully securing money loaned out by him."

This statement of the general rule is sustained by our decisions. Raisler v. Oliver & Co., 97 Ala. 710, 12 So. 238, 38 Am.St.Rep. 213; Ferguson, pro. ami, v. Lowery et al., 54 Ala. 510, 25 Am.Rep. 718. See also, Konigmacher v. Kimmel, 1 Pen. & W. (Pa.) 207, 21 Am.Dec. 374; Dietterich v. Heft, 5 Pa. 87.

■■ The appellant further insists that it is relieved of liability except for "a wilful·disregard of duty" by the exculpating stipulations embodied in the deed of trust executed by the nominal borrower, Zoe S. Blair, to appellant. Whether such stipulations are void against public policy, we need not decide in this case. The complainant was not a party to that instrument, nor did the trust arise out of its execution. There was evidence justifying the conclusion that she had no knowledge of its existence until she discovered the trustee's default. Some of the evidence bearing on this particular issue, on which appellant relies to overturn the conclusion expressed in the court's final decree, is documentary in form, consisting of entries on the checks and other documents offered by the parties. Whether such writings were placed there by the complainant or

the defendant, and when, were questions, as appears from the argument at the bar, presented to the trial court. That court had the original documentary evidence, and here it is in transcribed form. Hence, we shall assume that the conclusion of the trial court on this phase of the issues was sustained by the evidence.

In the circumstances, knowledge of the exculpatory provisions will not be imputed by the fact the deed was recorded. It was the defendant's duty, imposed by the law of agency, to inform the complainant of the existence and contents of such deed before it could rely on its provision to interrupt the relations of confidence and trust arising out of the circumstances surrounding the parties.

We are therefore in accord with the conclusion expressed in the circuit court's final decree, and it is ordered that it be and is hereby affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.